CHARLES H. BISSELL, as Supervisor, etc., Appellant, *v.* RAYMOND SAXTON et al., Impleaded, etc., Respondents.

The sureties upon an official bond are not liable for a defalcation of their principal, occurring during a term preceding that for which the bond was given ; nor are they made liable because their principal had during the term for which the bond was given, property out of which he might have provided funds to make good the defalcation.

(Argued February 14, 1879 ; decided March 18, 1879.)

APPEAL from judgment of the General Term of the Supreme Court, in the third judicial department, affirming a judgment in favor of defendant, entered upon a decision of the court, on trial without a jury.

This action was brought by plaintiff as supervisor of the town of Westford, upon a bond given by defendants Draper and Griggs as principals, and the other defendants as sureties for the faithful performance by said principals of their duties as railroad commissioners for said town, under their appointment to that office for a term of three years from May 10th, 1870. Draper and Griggs were first appointed commissioners in 1867 for a term which expired on said 10th day of May, 1870.

The case is reported upon a former appeal in 66 N. Y., 55. The further facts appear sufficiently in the opinion.

*Samuel A. Bowen,* for appellant.    The sureties were liable for such moneys as their principals had belonging to the town at the time they executed the bond.    (*Bruce* v. *U. S.,* 17 How. [U. S.], 438, 443.)

*Samuel S. Edick & E. M. Harris,* for respondents. The sureties could not be held responsible for a defalcation of their principals occurring during a term preceding that for which the bond in suit was given.    (*Myers* v. *U. S.,* 1 McL., 493; *Mahaska* v. *Ingalls,* 16 Iowa, 81; *Townsend* v. *Everett,* 4 Ala., 607; 5 Pet., 573; *U. S.* v. *Boyd,* 5 How., 50; *Bruce* v. *U. S.,* 17 id., 447; Fell's Law on Sureties, 122; *Arlington* v. *Merick,* 2 Saund., 403–411; *Overacre* v. *Garret,* 5 Lans., 156; *Inhabitants of Rochester* v. *Randall,* 105 Mass., 295; 7 Am. R., 519; *Bramford* v. *Iles,* 3 Exch., 380; 7 Harr. Dig., 235; *Austin* v. *French,* 7 Met., 126; *Dedham Bank* v. *Chickering,* 3 Pick., 335; *Kingston Ins. Co.* v. *Decker,* 33 Barb., 196; *McCluskey* v. *Cromwell,* 11. N. Y., 598, 599; *Conger* v. *Ring,* 11 Barb., 356, 363, 364; *Van Horn* v. *Fonda,* 5 J. Ch., 388; *Blake* v. *Buff. R. R. Co.,* 56 N. Y., 485; *Miller* v. *Stewart,* 9 Wheat., 702, 703; *Ludlow* v. *Simond,* 2 Cai. Cas., 1.)

DANFORTH, J.    Since the decision by this court upon the former appeal, (66 N. Y., 55), the issues in the action have been again tried and the complaint dismissed by the trial court as to all the defendants.    This result was reached by the learned judge who presided at the trial, after an examination of the evidence then before him and a comparison of the conclusions to be drawn from it with the facts established upon the former trial and upon which our decision rested.    He held that the material facts were the same in both cases, and rendered his decision in accordance with the opinion of this court.    The learned counsel for the appellant

has failed to satisfy us that, in so holding, the court on the former appeal erred. We thought it apparent that the defalcation for which the action was brought occurred during a term of office prior to that for which the bond in suit was given and consequently that there was no breach of its condition, and the facts now presented lead to no change in our opinion upon this question.

The complaint alleged the receipt of $30,000, in July, 1869, by Griggs & Draper, then commissioners of the town, and charged a default on their part in July, 1873, in not paying over $17,000, portion thereof on demand of their successors in office. The answer of the defendants admitted the receipt of the money, but denied that any portion of it was in the hands of the commissioners or under their control, at any time after the year 1869; and the judge upon the trial found that the money was received in August, 1869, by the then commissioners; that they, in the same month, converted it to their own use; that their then term of office expired on the 10th day of May, 1870, on which day Griggs & Draper entered upon a new term of office, then giving the bond in question; and that no part of the said $30,000, so paid or deposited, ever came back to the hands of the commissioners or either of them.

The case discloses that the $30,000 above referred to was received by Griggs, one of the commissioners, on the 2d of August, 1869, and, on that day, deposited by him, not to the credit of the commissioners as such, or to his own credit as commissioner, but to his credit as an individual, with Vermilye & Co., brokers, in the city of New York, with whom he dealt as bankers; at this time, Griggs had overdrawn his bank account, and was indebted to them in the sum of $54,000, and the money so deposited was applied to reduce that indebtedness, and "no part of it ever came back to the hands of the commissioners or either of them, and no part was ever repaid to them;" that on the 10th day of May, 1870, Griggs had so overdrawn his account that he was indebted to Vermilye & Co. in the sum of $44,000, for

which they then held collaterals of the value, as estimated, of $69,000, or thereabouts; and it is claimed by the appellants that as the property in the hands of Vermilye & Co., exceeded by more than the amount claimed in this action the sum due them, that the surplus must be considered as money or property in the hands of the commissioners, at the time of the execution of the bond in suit, and that for it the sureties are liable. Undoubtedly this would be so if the money or property on deposit with Vermilye & Co. was the money or property of the town, or under the control of the commissioners as such. But it was not. The trial court finds, and not without evidence to sustain the finding, that the collaterals held by Vermilye & Co. had been purchased by them in the course of their conduct of Griggs' individual and private stock operations and enterprises; that they had always been held in the name of the firm or its clerks, and that Griggs had only a redeemable interest in them; that he never had any account with them as commissioner, nor did they ever know or suspect that Griggs was acting as commissioner, or that any of the money which came to their hands from Griggs belonged to the town or to any person other than Griggs; and that none of the stock or bonds in their hands could be traced or set apart or identified as bonds or stocks which were the avails of the $30,000, or any part thereof; and therefore, the question comes to this, are the sureties liable upon their bond because Griggs had under his control property which he might, if he had so chosen, have transferred or converted into money and transferred to himself and Draper, or to himself as commissioner? It seems to me that they are not. The liability cannot attach in consequence of his omission to provide funds to replace those converted to his own use, either by sale of individual property or his personal industry. The condition of their undertaking is very plain, and they cannot be charged until, after the execution of their bond and during the term of office stated in it, the commissioners, or one of them, fail in the performance of some official statutory duty, or fail to make a proper

application of money, stocks or bonds, issued by them, or coming into their hands. This is not made to appear, and now, not less than before, it seems to us that the conversion was complete when Griggs paid in the $30,000, to apply upon his indebtedness to Vermilye & Co., and as this occurred before the execution of the bond in suit, the court did not err in dismissing the complaint.

The judgment should be affirmed, with costs.

All concur, except RAPALLO and EARL, JJ., not voting.

Judgment affirmed.